J-S70039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                  :           PENNSYLVANIA
                                  :
            v.                      :
                                  :
                                  :
RONALD B. LEESE, JR.           : 
                                  :
          Appellant        :   No. 685 MDA 2017

Appeal from the Judgment of Sentence June 25, 2015
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0004076-2014

BEFORE:  GANTMAN, P.J., SHOGAN, J., and OTT, J.

MEMORANDUM BY OTT, J.:                **FILED APRIL 04, 2018**

Ronald B. Leese, Jr., appeals, *nunc pro tunc*, from the judgment of sentence imposed on June 25, 2015, in the Court of Common Pleas of York County.  A jury found Leese guilty of statutory sexual assault, involuntary deviate sexual intercourse ("IDSI"), aggravated indecent assault, incest, corruption of minors, indecent assault, and selling or furnishing liquor or malt or brewed beverages to minors.[1]  The trial court sentenced Leese to an aggregate term of 10½ to 21 years' incarceration.  In this appeal, Leese challenges the weight of the evidence, the sufficiency of the evidence supporting his aggravated indecent assault conviction, and the sentence imposed for his IDSI conviction.  Upon review, we affirm.

The trial court set forth the factual history as follows:

_____

[1] 18 Pa.C.S. §§ 3122.1(b), 3123(a)(7), 3125(a)(8), 4302(b), 6301(a)(1)(ii), 3126(a)(8), and 6310.1(a), respectively.

This case arises out of a sexual assault that happened between April 26, 2014 and April 27, 2014 at the modular home of Ella Fake at 10304 Kohler Road, Felton, York County, Pennsylvania. At the time of the incident, Ella Fake shared the modular home with her brother, Alan Kilgore, and [Leese]. On the evening of April 26, 2014, the fourteen-year-old victim, M.H., had an argument with her mother and texted her uncle, [Leese], telling him that she wanted to leave the house and asked him to pick her up. [Leese] woke up his stepfather, M.H.'s step-grandfather, Alan Kilgore, and told him that M.H. wanted to stay at their place for the night. Mr. Kilgore and [Leese] drove to M.H.'s home, picked her up, and took her to their home at 10304 Kohler Road.

Shortly after arriving, Mr. Kilgore went back to bed and [Leese] and M.H. remained in the living room area alone. At the time, [Leese] had been living in the modular home and was using the living room as his bedroom and was using the couch as a bed. While they were in the living room, M.H. asked [Leese] if he had any marijuana and [Leese] told her he did not. [Leese] did inform M.H. that he had Vicodin pills and took two pills out of a silver pill holder on his keychain. M.H. took the pills and drank them down with tea or water. Later that evening, [Leese] gave M.H. a fruity drink, like Boone's Farm, and M.H. tried the drink. M.H. stated that she found the drink was strong, knew that the drink had alcohol in it, and [Leese] told her that he had put tequila in the drink. [Leese] later gave M.H. a little bottle of wine and M.H. drank the bottle.

As the night progressed somewhere between 1:30 a.m. and 2:00 a.m. on April 27, 2014, M.H. started to feel different and knew the pills were affecting her. M.H. was sitting on the couch, leaning against one of the arm rests, and [Leese] came over to her and removed her blue sweatpants and underwear she was wearing. After removing her pants and underwear, [Leese] began touching M.H.'s sides and back with his hands and proceeded to kiss her neck and chest area. [Leese] then took his penis and placed it into M.H.'s vagina and anus. [Leese] then told M.H. that he wanted to engage in oral sex with her and put his penis in M.H.'s mouth. Afterwards, [Leese] performed oral sex on M.H. by putting his mouth and tongue inside and

outside of M.H.'s vagina.[2] [Leese] then took his hands and touched the inside and outside of M.H.'s vagina. M.H. estimates that all of this took place over the course of three or four hours. M.H. testified that several times throughout the assault, [Leese] ejaculated semen; once inside of her anus and another time she observed that semen landed on her blue sweatpants that were lying on the floor in between the television and the couch. During the assault, [Leese] whispered that M.H. was "tight" and that "this must stay our little secret." At the time this assault took place, M.H. was fourteen years old; [Leese] was thirty-three years old; M.H. was the whole blood niece of [Leese]; and [Leese] and M.H. were never married. Mr. Kilgore took M.H. home around 7:00 or 8:00 p.m. on April 27, 2014.

On Wednesday, April 30, 2014, M.H. went to a prescheduled counseling session with her counselor, and informed her during this session that [Leese] had sexually assaulted her. After receiving this information, the counselor informed M.H.'s mother, Rhonda Brecht, and the three went to the hospital so M.H. could receive a safety exam. SAFE Nurse Amy Alquist performed the exam on M.H. and observed redness and bleeding inside M.H.'s vagina near the cervical opening and observed venous pooling and two lacerations to M.H.'s anus and rectum. Nurse Alquist determined that the injuries were consistent with M.H.'s story.

Sometime between 9:30-9:45 p.m. on April 30, 2014, Trooper Jonathan Colarusso received a call from the hospital to meet with M.H. and Ms. Brecht about the sexual assault. Trooper Colarusso interviewed M.H. and Ms. Brecht and later obtained consent from Ms. Brecht to search her home for evidence. During the search, Trooper Colarusso discovered the blue sweatpants that M.H. stated she wore on the night of the assault. Trooper Colarusso observed a white dried substance inside the waistband area and also

_____

[2] The court's statement that Leese put his tongue and mouth "inside" M.H.'s vagina somewhat mischaracterizes part of M.H.'s testimony. M.H. did testify Leese performed oral sex on her. However, she specifically stated, "His mouth and tongue [were] touching my vagina. Well, the outside of it." N.T., 3/9/15, at 103.

inside the crotch area of the sweatpants. Trooper Colarusso logged the sweatpants into evidence and the sweatpants were sent to the National Medical Services Laboratories for DNA analysis. Forensic Biologist Jennifer K. Sears performed tests on the sweatpants and determined that seminal fluids and sperm cells were present on the sweatpants and when comparing the results with [Leese's] DNA, it was at least 7 trillion times more likely to have originated from [Leese] than any other random individual.

Trooper Colarusso also obtained M.H.'s iPod from her stepmother ... after M.H. informed him that she had had conversations in the past with [Leese], before the sexual assault, and many of them were "sexually suggestive in nature." One such text messaging conversation on March 5, 2014, involved M.H. asking [Leese], known as "Uncle Bug" in the messages, for some blue raspberry wave and [Leese] responding: "I can try babe but I don't drink that shit so know [now] I have to stop twice ... you will owe me that sweet little ass." On that same day, in another text message, [Leese] told M.H. "you are sexy little bitch! Lmao." M.H. testified in court that after the assault, [Leese] called her the day after and the next few days where he told her that he felt guilty about what happened. Based on all the information he received, Trooper Colarusso obtained an arrest warrant and [Leese] was arrested on May 15, 2014 at his workplace.

Trial Court Opinion, 7/12/2017, at 3-8 (internal citations omitted).

The court recited the procedural history of this case as follows:

On March 12, 2015, [Leese] was convicted of Statutory Sexual Assault, [IDSI], Aggravated Indecent Assault, Incest, Corruption of Minors, Indecent Assault, and Furnishing Alcohol to Minors, and acquitted on the charge of Unlawful Contact or Communication with a Minor, after a jury trial at which [Leese] was represented by Farley G. Holt, Esq. On June 25, 2015, [Leese] was sentenced to serve 5-10 years' incarceration on the statutory sexual assault count, 10-20 years' incarceration on the [IDSI] count, 5-10 years' incarceration on the aggravated indecent assault count, 4-8 years' incarceration on the incest count, 2-4 years' incarceration on the corruption of minors count,

- 4 -

1-2 years' incarceration on the indecent assault count, and 6-12 months['] incarceration on the furnishing alcohol to minors count. All counts were set to run concurrently to one another, except for the furnishing alcohol to minors count which was set to run consecutively, giving [Leese] a total aggregate sentence of 10½ to 21 years' incarceration.

On July 6, 2015, [Leese], through his attorney, Farley G. Holt, Esq., filed three post-sentence motions: a motion for judgment of acquittal, a motion for a new trial, and a motion for reconsideration of sentence. On August 20, 2015, [the trial court] issued an order denying all three post-sentence motions.

On September 12, 2016, [Leese] filed a *pro se* petition pursuant to the PCRA. .... On April 4, 2017, [the PCRA court] issued an order granting reinstatement of [Leese's] Appeal Rights *nunc pro tunc* and ordered that an appeal be filed within fifteen days. On April 18, 2017, [Leese's] counsel filed a Notice of Appeal to the Superior Court. On May 25, 2017, [Leese's] counsel filed a motion for extension of time to file the [Pa.R.A.P. 1925(b)] statement of errors [complained of on appeal]. On May 30, 2017, [the trial court] granted [Leese's] motion for extension of time. On June 15, 2017, [Leese's] counsel filed a statement of [errors] complained of on appeal.

*Id.* at 1-3 (footnotes omitted).

Based on our disposition, we will address Leese's first two issues together. In his first issue, Leese argues the trial court erred when it denied his claim that the verdict was against the weight of the evidence. **See** Leese's Brief at 29. Leese attacks the credibility of M.H.'s testimony based on her (1) delay in reporting the incident; (2) history of suicide attempts and schemes to "get [Leese] in trouble"; (4) statements that she was not sure if the assault was real and her "inappropriate, laughing manner" with the SAFE nurse; (3) failure to describe Leese's penis piercing; (5) normal behavior and friendly

text message exchanges with Leese in the days after the incident; (6) threat of retaliation against Leese after learning Leese had told M.H.'s mother about M.H.'s theft of Xanax; and (7) absence of toxicology evidence to support M.H.'s testimony that Leese drugged her prior to the assault. *See id.* at 30-32.

In his second issue, Leese argues the evidence was insufficient to support his conviction of aggravated indecent assault. *See id.* at 32. Leese contends the Commonwealth failed to adduce evidence that Leese used his finger to penetrate M.H.'s vagina or anus. Leese asserts M.H. testified that Leese touched her with his hands, but she did not clearly describe digital penetration. *See id.* at 34.

Upon our review of the record, the parties' briefs, and the relevant law,[3] we conclude the trial court thoroughly addressed and properly disposed of Leese's first two claims on appeal in its opinion. *See* Trial Court Opinion, 7/12/2017, at 9-18 (finding (1) the jury's verdict was not against the weight of the evidence because (a) M.H. recalled sufficient details of the sexual assault, which were corroborated by the medical testimony of SAFE Nurse

---

[3] *See Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (setting forth our standard of review regarding a weight claim); *Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013) (same), *cert. denied*, 134 S.Ct. 1792 (U.S. 2014); *see also Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (setting forth our standard of review regarding a sufficiency argument), *appeal denied*, 112 A.3d 651 (Pa. 2015).

Amy Alquist; (b) M.H. identified the specific pair of sweatpants she was wearing, and Trooper Colarusso recovered those sweatpants, which had semen stains on them;[4] (c) none of Ella Fake's or Alan Kilgore's testimony helped weigh the evidence in favor of Leese; (d) the jury was free to decide whether all, part, or none of Leese's testimony was credible, and it is clear the jury did not find Leese credible in light of the testimony given by M.H.; and (e) M.H.'s testimony was not so incredible or contrary to the evidence that Leese's guilty verdict shocked the conscience of the court; and (2) the evidence was sufficient to support Leese's conviction of aggravated indecent assault[5] because (a) M.H. testified that Leese used several parts of his body

---

[4] As the trial court recounted in its factual history of the case, forensic tests revealed the semen on the sweatpants was 7 trillion times more likely to have originated from Leese than any other random individual. **See id.** at 7.

[5] In its brief, the Commonwealth argues Leese waived his sufficiency claim by failing to specify in his Rule 1925(b) concise statement which element(s) of the offense he was challenging. **See** Commonwealth's Brief at 15-18; **Commonwealth v.Gibbs**, 981 A.2d 274, 281 (Pa. Super. 2009), *appeal denied*, 3 A.3d 670 (Pa. 2010) (stating that when challenging the sufficiency of the evidence, an appellant's concise statement must specify the element or elements upon which the evidence was insufficient in order to preserve the issue for appeal). In his concise statement, Leese stated: "[Leese] specifically alleges that the elements of Aggravated Indecent Assault were not proven beyond a reasonable doubt[.]" Leese's Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), 6/15/17, at 2 (unpaginated). Nevertheless, only one of the elements of the aggravated indecent assault charge was in dispute at trial, *i.e.*, "penetration, however slight, of the genitals or anus of a complainant." **See** 18 Pa.C.S. § 3125(a)(8). That is the only element Leese challenges in his brief, and the trial court addressed it in its opinion. We conclude Leese's identification of the offense of aggravated

to penetrate her vagina and anus; (b) there is no evidence that Leese's conduct was for good faith medical, hygienic or law enforcement reasons; (c) Leese was at least four years older than M.H. at the time of the incident; (d) Leese and M.H. were never married to each other; (e) M.H.'s testimony presented an account of what Leese did to her, how long the incident lasted, and where it occurred; and (f) SAFE Nurse Alquist's medical testimony regarding M.H.'s injuries corroborated M.H.'s account of the assault). Accordingly, we rest upon the court's well-reasoned basis with respect to those issues.

In his third issue, Leese argues the trial court failed to provide adequate reasons on the record for his IDSI sentence of 10 to 20 years' incarceration, which exceeded the top of the aggravated range of the Sentencing Guidelines. **See** Leese's Brief at 35-36. Leese describes the sentence as "illegal" but concedes it does not exceed the lawful statutory maximum sentence. **See id.** Leese's claim does not implicate the legality of his sentence, but rather the discretionary aspects of the court's sentencing decision. **See Commonwealth v. Sheller**, 961 A.2d 187, 189 (Pa. Super. 2008), *appeal denied*, 980 A.2d 607 (Pa. 2009) (stating claim that trial court imposed sentence beyond the aggravated range of the sentencing guidelines without

---

indecent assault in his concise statement was sufficiently specific to permit our review of this issue.

stating adequate reasons on the record represented a challenge to the discretionary aspects of sentencing).

A challenge to the discretionary aspects of a sentence is not absolute, but rather, "must be considered a petition for permission to appeal." *Commonwealth v. Best*, 120 A.3d 329, 348 (Pa. Super. 2015) (citation and internal citation omitted). To reach the merits of such a claim, this Court must determine:

> (1) whether the appeal is timely; (2) whether [the defendant] preserved [the] issue; (3) whether [the defendant's] brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Commonwealth v. Edwards*, 71 A.3d 323, 329-30 (Pa. Super. 2013) (citation omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013). "[C]laims relating to the discretionary aspects of a sentence are waived if an appellant does not include a Pa.R.A.P. 2119(f) statement in his brief and the opposing party objects to the statement's absence." *Commonwealth v. Brougher*, 978 A.2d 373, 375 (Pa. Super. 2009).

Here, Leese failed to comply with the applicable procedural requirements for his discretionary sentencing challenge. Leese's brief does not contain a Rule 2119(f) statement, and the Commonwealth has objected this omission. *See* Commonwealth's Brief at 23-24. Moreover, Leese failed to raise any sentencing issues in his court-ordered Rule 1925(b) statement.

***See Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998) (stating: "[I]n order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of [Errors] Complained of on Appeal pursuant to Rule 1925.  Any issues not raised in a 1925(b) statement will be deemed waived").  Therefore, Leese waived his claim regarding the discretionary aspects of his sentence.  Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.[6]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/4/2018

---

[6] The parties shall attach a redacted copy of the trial court opinion in the event of further proceedings in this matter.

IN THE COURT OF COMMON PLEAS YORK COUNTY PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA : Docket No. CP-67-CR-4076-2014

v. : 685 MDA 2017

RONALD B. LEESE, JR
*Defendant*

## OPINION PURSUANT TO RULE 1925(a) OF THE PENNSYLVANIA RULES OF APPELLATE PROCEDURE

This matter is again before the Court as a result of a PCRA proceeding, which resulted in an order reinstating Defendant's direct appeal rights, *nunc pro tunc*.

**Procedural History:**

On March 12, 2015, the Defendant, Ronald B. Leese, Jr., was convicted of Statutory Sexual Assault[1], Indecent Sexual Intercourse,[2] Aggravated Indecent Assault[3], Incest[4], Corruption of Minors[5], Indecent Assault[6], and Furnishing

---

[1] 18 Pa.C.S.A. § 3122.1(b)
[2] 18 Pa.C.S.A. § 3123(a)(7)
[3] 18 Pa.C.S.A. § 3125(a)(8)
[4] 18 Pa.C.S.A. § 4302(b)(2)
[5] 18 Pa.C.S.A. § 6301
[6] 18 Pa.C.S.A. § 3126(a)(8)

1

Alcohol to Minors[7], and acquitted on the charge of Unlawful Contact or Communication with a Minor, after a jury trial at which the Defendant was represented by Farley G. Holt, Esq. On June 25, 2015, Defendant was sentenced to serve 5-10 years' incarceration on the statutory sexual assault count, 10-20 years' incarceration on the indecent sexual intercourse count, 5-10 years' incarceration on the aggravated indecent assault count, 4-8 years' incarceration on the incest count, 2-4 years' incarceration on the corruption of minors count, 1-2 years' incarceration on the indecent assault count, and 6-12 months incarceration on the furnishing alcohol to minors count. All counts were set to run concurrently to one another, except for the furnishing alcohol to minors count which was set to run consecutively, giving Defendant a total aggregate sentence of 10 ½ to 21 years' incarceration.

On July 6, 2015, the Defendant, through his attorney, Farley G. Holt, Esq., filed three post-sentence motions: a motion for judgment of acquittal, a motion for a new trial, and a motion for reconsideration of sentence. On August 20, 2015, we issued an order denying all three post-sentence motions.

On September 12, 2016, Defendant filed a pro se petition pursuant to the PCRA. On October 20, 2016, the Honorable Richard K. Renn issued an order

---

[7] 18 Pa.C.S.A. § 6310.1(a)

2

appointing Jonelle Eshbach, Esq. as counsel for the Defendant and scheduled a hearing date on April 3, 2017. On April 4, 2017, we issued an order granting reinstatement of Defendant's Appeal Rights *nunc pro tunc* and ordered that an appeal be filed within fifteen days. On April 18, 2017, Defendant's counsel filed a Notice of Appeal to the Superior Court. On May 25, 2017, Defendant's counsel filed a motion for extension of time to file the statement of errors. On May 30, 2017, we granted Defendant's motion for extension of time. On June 15, 2017, Defendant's counsel filed a statement of matters complained of on appeal. The following is our opinion addressing the merits of the Defendant's arguments on appeal.

**Factual Background:**

This case arises out of a sexual assault that happened between April 26, 2014 and April 27, 2014 at the modular home of Ella Fake at 10304 Kohler Road, Felton, York County, Pennsylvania. (Notes of Testimony 03/10/2015, p. 341). At the time of the incident, Ella Fake shared the modular home with her brother, Alan Kilgore, and the Defendant. (N.T. 03/09/2015 p. 94). On the evening of April 26, 2014, the fourteen-year-old victim, M.H., had an argument with her mother and texted her uncle, the Defendant, telling him that she wanted to leave the house and

3

asked him to pick her up. (*Id.* at 93.) Defendant woke up his stepfather, M.H.'s step-grandfather, Alan Kilgore, and told him that M.H. wanted to stay at their place for the night. (*Id.*; N.T. 03/11/2015 pp. 416-421). Mr. Kilgore and the Defendant drove to M.H.'s home, picked her up, and took her to their home at 10304 Kohler Road. (N.T. 03/11/2015 pp. 421-22).

Shortly after arriving, Mr. Kilgore went back to bed and Defendant and M.H. remained in the living room area alone. (N.T. 03/09/2015 p. 94). At the time, Defendant had been living in the modular home and was using the living room as his bedroom and was using the couch as a bed. (N.T. 03/11/2015 pp. 411-12.) While they were in the living room, M.H. asked Defendant if he had any marijuana and Defendant told her he did not. (*Id.* at 95). Defendant did inform M.H. that he had Vicodin pills and took two pills out of a silver pill holder on his keychain. (*Id.* at 94, 144-45.) M.H. took the pills and drank them down with tea or water. (*Id.* at 95). Later that evening, Defendant gave M.H. a fruity drink, like Boone's Farm, and M.H. tried the drink. (*Id.* at 97). M.H. stated that she found the drink was strong, knew that the drink had alcohol in it, and Defendant told her that he had put tequila in the drink. (*Id.* at 97, 141). Defendant later gave M.H. a little bottle of wine and M.H. drank the bottle. (*Id.* at 97).

4

As the night progressed, somewhere between 1:30 a.m. and 2:00 a.m. on April 27, 2014, M.H. started to feel different and knew the pills were affecting her. (*Id.* at 101, 104-105). M.H. was sitting on the couch, leaning against one of the arm rests, and Defendant came over to her and removed her blue sweatpants and underwear she was wearing. (*Id.* at 101, 154). After removing her pants and underwear, Defendant began touching M.H.'s sides and back with his hands and proceeded to kiss her neck and chest area. (*Id.* at 102). Defendant then took his penis and placed it into M.H.'s vagina and anus. (*Id.* at 102-103). Defendant then told M.H. that he wanted to engage in oral sex with her and put his penis in M.H.'s mouth. (*Id.* at 103, 166). Afterwards, Defendant performed oral sex on M.H. by putting his mouth and tongue inside and outside of M.H.'s vagina. (*Id.* at 103). Defendant then took his hands and touched the inside and outside of M.H.'s vagina. (*Id.*). M.H. estimates that all of this took place over the course of three or four hours. (*Id.* at 104). M.H. testified that several times throughout the assault, Defendant ejaculated semen; once inside of her anus and another time she observed that semen landed on her blue sweatpants that were lying on the floor in between the television and the couch. (*Id.* at 104, 163). During the assault, Defendant whispered that M.H. was "tight" and that "this must stay our little secret". (*Id.* at 105). At the time this assault took place, M.H. was fourteen years

5

old; Defendant was thirty-three years old; M.H. was the whole blood niece of the Defendant; and Defendant and M.H. were never married. (*Id.* at 106-107). Mr. Kilgore took M.H. home around 7:00 or 8:00 p.m. on April 27, 2014. (N.T. 03/10/2015 p. 391).

On Wednesday, April 30, 2014, M.H. went to a prescheduled counseling session with her counselor, and informed her during this session that Defendant had sexually assaulted her. (N.T. 03/09/2015 p. 117). After receiving this information, the counselor informed M.H.'s mother, Rhonda Brecht, and the three went to the hospital so M.H. could receive a safety exam. (*Id.*) SAFE Nurse Amy Alquist performed the exam on M.H. and observed redness and bleeding inside M.H.'s vagina near the cervical opening and observed venous pooling and two lacerations to M.H.'s anus and rectum. (N.T. 03/10/2015 pp. 258-261). Nurse Alquist determined that the injuries were consistent with M.H.'s story. (*Id.*)

Sometime between 9:30-9:45 p.m. on April 30, 2014, Trooper Jonathan Colarusso received a call from the hospital to meet with M.H. and Ms. Brecht about the sexual assault. (*Id.* at 304). Trooper Colarusso interviewed M.H. and Ms. Brecht and later obtained consent from Ms. Brecht to search her home for evidence. (*Id.* at 304-305). During the search, Trooper Colarusso discovered the blue sweatpants that M.H. stated she wore on the night of the assault. (*Id.* at 305-

6

306). Trooper Colarusso observed a white dried substance inside the waistband area and also inside the crotch area of the sweatpants. (*Id.*) Trooper Colarusso logged the sweatpants into evidence and the sweatpants were sent to the National Medical Services Laboratories for DNA analysis. (*Id.* at 310). Forensic Biologist Jennifer K. Sears performed tests on the sweatpants and determined that seminal fluids and sperm cells were present on the sweatpants and when comparing the results with Defendant's DNA, it was at least 7 trillion times more likely to have originated from Defendant than any other random individual. (*Id.* at 364-65).

Trooper Colarusso also obtained M.H.'s iPod from her stepmother, ██████ ████████ after M.H. informed him that she had had conversations in the past with Defendant, before the sexual assault, and many of them were "sexually suggestive in nature." (*Id.* at 311). One such text messaging conversation on March 5, 2014, involved M.H. asking Defendant, known as "Uncle Bug" in the messages, for some blue raspberry wave and Defendant responding: "I can try babe but I don't drink that shit so know [now] I have to stop twice … you will owe me that sweet little ass". (Evidence Exhibits p. 17). On that same day, in another text message, Defendant told M.H. "you are sexy little bitch! Lmao". (Evidence Exhibits p. 19). M.H. testified in court that after the assault, Defendant called her the day after and the next few days where he told her that he felt guilty about what happened. (N.T.

7

03/09/2015 p. 105). Based on all the information he received, Trooper Colarusso obtained an arrest warrant and Defendant was arrested on May 15, 2014 at his workplace. (N.T. 03/10/2015 p. 318).

On March 12, 2015, the Defendant, Ronald B. Leese, Jr., was convicted of Statutory Sexual Assault, Indecent Sexual Intercourse, Aggravated Indecent Assault, Incest, Corruption of Minors, Indecent Assault, and Furnishing Alcohol to Minors. On June 25, 2015, he was sentenced to serve an aggregate sentence of 10 ½ to 21 years of incarceration. On April 18, 2017, Defendant, through counsel, filed a timely Notice of Appeal to the Superior Court. On June 15, 2017, Defendant's counsel filed a Concise Statement of Matters on Appeal.

**Issues:**

Defendant has essentially raised two issues on appeal:

I.      Whether the trial court should grant a motion in arrest of judgment based upon insufficient evidence on Count 3, Aggravated Indecent Assault, in that the Commonwealth did not prove all the elements of the offense beyond a reasonable doubt.

II.     Whether the findings of guilt on all offenses were against the weight of the evidence presented at trial.

8

## Discussion:

*Sufficiency of the Evidence:*

Defendant first argues that he is entitled to relief because the evidence was insufficient to establish a conviction for Aggravated Indecent Assault. Defendant also states in his 1925(b) Statement that the Defendant is entitled to a full review of the entire record to determine whether the guilty verdicts were properly based upon the evidence presented and that Defendant is not required to identify the elements of the offense that were not proven. Defendant's second assertion is incorrect. The law requires that defendants identify the elements of the offense not proven as well as which offenses they are contesting in their appeal.

"When challenging the sufficiency of the evidence on appeal, the Appellant's 1925 statement must 'specify the element or elements upon which the evidence was insufficient' in order to preserve the issue for appeal." *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) *quoting Commonwealth v. Williams*, 959 A.2d 1252, 1258 (Pa. Super. 2008). "Such specificity is of particular importance in cases where . . . Appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Id.*

9

Because Defendant has only made a specific assertion as to Count 3 Aggravated Indecent Assault, and did not specifically contest the other offenses or elements of these offenses, the Court will only discuss the sufficiency of the evidence for Count 3, Aggravated Indecent Assault, and considers challenges for sufficiency of the evidence for all other offenses waived. In regards to the sufficiency of the evidence challenge to Count 3, Aggravated Indecent Assault, the Court finds that the Commonwealth did meet its burden by proving each element beyond a reasonable doubt and Defendant is not entitled to relief.

The standard of review for an appellate court reviewing a sufficiency of the evidence claim is well settled:

> 'The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.'

*Commonwealth v. Charlton*, 902 A.2d 554, 563 (Pa. Super. 2006) (*quoting Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001).

10

In order to obtain a conviction under 18 Pa.C.S.A. § 3125, Aggravated Indecent Assault, the Commonwealth must prove beyond a reasonable doubt that:

(1) A defendant engaged in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic, or law enforcement procedures

(2) The complainant is less than 16 years of age.

(3) The defendant is four or more years older than the complainant.

(4) The complainant and the defendant are not married to each other.

18 Pa.C.S.A. §3125(a)(8).

"It is well-established that 'the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses.'" *Commonwealth v. Castelhun*, 889 A.2d 1228, 1233 (Pa. Super. 2005) *quoting Commonwealth v. Bishop*, 742 A.2d 178, 189 (Pa. Super. 1999).

In the present case, the Defendant alleges that the elements of Aggravated Indecent Assault were not proven beyond a reasonable doubt. Defendant does not cite which of the four elements was not proven, contrary to *Gibbs*, but we will still address all four elements.

11

The second, third, and fourth elements were easily proven beyond a reasonable doubt by the Commonwealth. First, the victim, M.H., was only fourteen-years-old at the time this assault happened on April 27, 2014. Second, the Defendant was thirty-three years old at the time of the assault, which is clearly more than four years older than M.H. Finally, Defendant and M.H. were never married to each other.

In regards to the first element, the Commonwealth also proved beyond a reasonable doubt that Defendant did penetrate M.H.'s genitals and anus with several parts of his body. There is no evidence that Defendant penetrated M.H. for medical, law enforcement, or other good faith reasons. M.H.'s testimony was that Defendant took his penis and penetrated her vagina and anus while she was laying on the couch. (N.T. 03/09/2015 pp. 102-103). In addition, M.H. testified that Defendant digitally penetrated her vagina with his hands and penetrated her vagina with his mouth and tongue. *Id.* These incidents all took place on April 27, 2014 for approximately three to four hours starting sometime between 1:30 a.m. and 2:00 a.m. (*Id.* at 104-105). Further, the medical testimony of SAFE Nurse Amy Alquist corroborated M.H.'s testimony finding that the injuries were consistent with the account given by M.H. (N.T. 03/10/2015 pp. 258-261).

12

The Court finds that the Commonwealth proved all of the elements of Aggravated Indecent Assault beyond a reasonable doubt. The testimony of M.H. provided all of the necessary facts needed to prove all of the elements and the jury was free to believe all, part, or none of M.H.'s testimony. The evidence is not weak or inconclusive, and presents an account of what Defendant did to M.H., how long this occurred, and where it occurred. This evidence was further corroborated by the testimony of Amy Alquist, which corroborated M.H.'s testimony about her injuries. Therefore, in viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to convict Defendant of 18 Pa.C.S.A. §3125: Aggravated Indecent Assault. Thus, Defendant is not entitled to relief on this claim.

*Weight of the Evidence*

Defendant next argues that he is entitled to relief because the findings of guilt on the aforementioned offenses were against the weight of the evidence presented at trial. Defendant alleges there were substantial conflicts in M.H.'s testimony because M.H. testified inconsistently with previous statements given. Defendant also argues M.H. was not patently credible, questioned whether the allegations

13

were real or imagined, and that defense witnesses directly contradicted M.H.'s testimony. We disagree.

"The weight of the evidence is exclusively for the fact finder who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Castelhun*, 889 A.2d at 1234: *quoting Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003). "[The Court] cannot substitute [its] judgment for that of the finder of fact." *Id.* The Court may only reverse the lower court's verdict "if it is so contrary to the evidence as to shock one's sense of justice." *Id.*

This case was tried before a jury from March 9, 2015 to March 12, 2015. The Commonwealth presented testimony from the victim, M.H., SAFE Nurse Amy Alquist, and Trooper Jonathan Colarusso. Defendant presented testimony from his stepfather/M.H.'s step-grandfather, Alan Kilgore, his step-aunt and Alan Kilgore's sister, Ella Fake, and the Defendant testified on his own behalf.

M.H.'s testimony begins on page 92 of the transcript of March 9, 2015 and continued into the second day of the trial, March 10, 2015, until page 244. M.H. did not recall the correct date of the assault, stating that it happened on April 29, 2014 when it actually happened on April 27, 2014. (N.T. 03/09/2015 p. 96). However, M.H. recalled the correct month, year, the fact that the incident happened on a Saturday night into Sunday morning (*Id.* at 122), and the residence

14

where the sexual assault happened. In addition, M.H. recalled sufficient details of the sexual assault that were corroborated by the medical testimony of Amy Alquist. M.H. also recalled seeing Defendant ejaculate onto her sweatpants. (*Id.* at 104-105). M.H. was able to identify the specific pair of sweatpants that she was wearing and Trooper Colarusso recovered these sweatpants that had semen stains on them. The Court finds that the testimony given by M.H. is enough that a jury could find her testimony to be credible.

Defendant argues that the greater weight of the evidence showed that M.H. was not credible, was inconsistent in her testimony, and substantial conflicts existed in her testimony. Defendant also argues that the evidence was countered by testimony from defense such that the resulting verdict should shock the Court's sense of justice. The Court disagrees.

Defense witness Ella Fake testified that while Defendant woke her up to ask if M.H. could come spend the night at their place, Ms. Fake did not actually know M.H. had spent the night until she woke up the next morning and saw M.H. asleep in the living room. (N.T. 03/10/2015 pp. 402-406). The Court does not find that any of the evidence provided by Ella Fake helped weigh the evidence in favor of Defendant.

15

Defense witness Alan Kilgore testified that he went to bed soon after bringing M.H. back to his place. Mr. Kilgore fell asleep in his own bedroom, claimed to have woken up a couple of times because he heard the television, and fell back asleep. (N.T. 03/10/2015 p. 383-84) Mr. Kilgore testified he knew he did not leave his room again that night until he woke up in the morning. *Id.* Mr. Kilgore stated that he never heard any other noises other than the television. *Id.*

The next morning, Mr. Kilgore stated that he took M.H. out to practice her driving and at other times during the day left M.H. with Defendant alone while he ran errands. *Id.* at 388-390. Mr. Kilgore stated that nothing seemed out of the ordinary and M.H. did not cry or seem upset. *Id.*

It is up to the jury to determine if Mr. Kilgore's testimony was credible or not in determining whether Defendant sexually assaulted M.H. that night or whether he didn't. The Court does not find that any of the evidence presented by Mr. Kilgore helped weigh the evidence in favor of the Defendant.

Finally, the Defendant testified in his own defense. Defendant testified that he and M.H. watched a movie, that M.H. got the bottle of wine herself, that M.H. told him she had taken Xanax earlier that night, Defendant never gave M.H. any Vicodin, and at some point he fell asleep on the couch. (N.T. 03/11/2015 pp. 422-25). Defendant denied that there was ever any Vicodin in the house. *Id.* at 437.

16

Defendant insisted that he did not sexually assault M.H. in any way. *Id.* at 442. When asked about the semen stains that were found on M.H.'s sweatpants, Defendant testified that when Alan Kilgore took M.H. out driving, Defendant watched a pornography video and masturbated to the video, resulting in ejaculation. *Id.* at 431-35. Defendant testified that he thought the door to the home was locked and M.H. did not have a key to get inside. *Id.* Defendant testified he was startled when M.H. came into the trailer while his genitals were still exposed and he grabbed the closest thing to him, which happened to be M.H.'s sweatpants, and covered his genitals with them. *Id.* Defendant testified that this is how the semen stains got on the pants, not from a sexual assault. Defendant testified that M.H. was disgusted upon seeing this scene and went back outside. *Id.* Defendant stated he went outside and apologized to M.H. that she had to see him exposed that way. *Id.*

It is up to the jury to decide whether all, part, or none of Defendant's testimony was believable or credible. It is clear the jury found Defendant's testimony was not credible in light of the testimony given by the victim, M.H. The Court also notes on the record that we did not find the Defendant's testimony credible, either. (Sentencing Hearing 06/25/2015 p. 9). The testimony of M.H. was enough to convict Defendant and the jury obviously assigned great weight to that

17

testimony. The Court does not find that the testimony of M.H. is so incredible, unbelievable, or contrary to the evidence that it would shock the conscience of the Court to find Defendant guilty. Therefore, the Court does not find that the Defendant is entitled to relief on his weight of the evidence claim.

## CONCLUSION

For the reasons stated above, we respectfully submit that the Defendant's arguments on appeal are without merit.

Copies of this statement shall be sent to counsel for the parties.

BY THE COURT:

_____
Richard K. Renn, Judge

_____7/12/17_____
Date